UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

ROBERT SLOAN,

    Plaintiff,

vs.

REPACORP, INC.,

    Defendants.

Case No. 3:16-cv-161

Magistrate Judge Michael J. Newman
(Consent Case)

---

**DECISION AND ENTRY: (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 25); (2) DIRECTING THAT JUDGMENT BE ENTERED IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF; AND (3) TERMINATING THIS CASE ON THE COURT'S DOCKET**

---

This civil consent case is before the Court on the motion for summary judgment filed by Defendant Repacorp, Inc. ("Repacorp"). Doc. 25. Plaintiff Robert Sloan ("Sloan") filed a memorandum in opposition. Doc. 28. Thereafter, Repacorp filed a reply. Doc. 31. The Court has carefully considered all of the foregoing, as well as all Rule 56 evidence submitted by the parties on summary judgment. Accordingly, Defendant's motion is ripe for decision.

**I.**

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007)

(quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment -- rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*.

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Instead, the party opposing summary judgment has a shifting burden and "must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." *Id*. (citation omitted). Failure "to properly address another party's assertion of fact as required by Rule 56(c)" could result in the Court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Finally, "there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Buarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (citations omitted). Instead, "[i]t is the attorneys, not the judges, who have interviewed the witnesses and handled the physical exhibits; it is the attorneys, not the judges, who have been present at the depositions; and it is the attorneys, not the judges, who have a professional and financial stake in case outcome." *Id*. at 406. In other words, "the free-ranging search for supporting facts is a task for which attorneys in the case are equipped and for which courts generally are not." *Id*.

## II.

In support of their arguments on summary judgment, the parties rely on the deposition testimony of Sloan; the deposition testimony of Repacorp's President, Tony Heinl; and exhibits attached thereto. Docs. 23-24. In addition to deposition testimony, the parties also rely on testimony taken under oath and elicited from Sloan, Heinl, and Repacorp Plant Manager Gary

Parrott during an appeals hearing before the Ohio Unemployment Compensation Review Commission on July 25, 2014. Doc. 25-1. The Court has carefully considered all of the foregoing Rule 56 evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Unless otherwise stated, the following are the undisputed facts of the case.

This action arises from Sloan's employment with Repacorp. *See generally* doc. 1. Repacorp is a company that manufactures labels for other companies and uses heavy machinery for the printing of such labels. Doc. 25 at PageID 245-46. Sloan worked for Repacorp from March 7, 2007 until February 28, 2014. Doc. 24-1 at PageID 74. The parties have different perspectives at to why Sloan's employment ended; Sloan contends he was fired (*id*. at PageID 84), whereas Repacorp contends that Sloan abandoned his job (doc. 23-1 at PageID 53-54).

Throughout his employment with Repacorp, Sloan worked as a production manager. Doc. 25-1 at PageID 269. In that role, Sloan worked with, and around, Repacorp's heavy machinery, which included presses and rewinders. *Id*. at PageID 274. In total, Sloan worked on the machinery approximately ten to twenty percent of his workday. *Id*. There is no dispute that the machinery Sloan worked with and around was very dangerous. *See* doc. 24-1 at PageID 78; doc. 25-1 at PageID 283, 296. Sloan himself stated that the work environment at Repacorp was dangerous, especially if one does not have his or her "head in the game." Doc. 24-1 at PageID 78. In fact, Sloan testified that, "[i]f you're not careful, those presses will kill you." *Id*.

Because of the dangerous work environment at the Repacorp facility, Repacorp maintains an employee handbook that requires all employees to notify management if they are taking nonprescription or prescription medication.[1] *See* doc. 25-1 at PageID 277, 286. Sloan

---

[1] Notably, Sloan presents no allegation or argument that such a provision itself violates the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*., or any other provision of federal law such as the Health Insurance Portability and Accountability Act ("HIPPA"). *See* doc. 1 at PageID 1-6.

understood that testing positive for non-prescription mediation, or otherwise taking such medication, could result in his termination. *Id*. at PageID 277.

Before his employment with Repacorp began, Sloan experienced significant pain in his back and neck. Doc. 24-1 at PageID 70. Between 2006, *i.e.*, the year prior to his hiring, and the time of his termination in 2014, Sloan took prescription medication to cope with his neck and back pain. Doc. 24-1 at PageID 70-74, 80-81. Beginning in approximately June or July 2013, Sloan started taking prescription morphine medication. Doc. 25-1 at PageID 273. Specifically, Sloan was then prescribed 30 mg of time-released morphine, and 15 mg of instant release morphine he took twice a day. *Id*.

Without dispute, Sloan did not tell his supervisors at Repacorp that he was taking prescription morphine until the day of his termination. *Id*. at PageID 273-74; *see also* doc. 24-1 at PageID 79. Sloan admits that, at least on one occasion, he abused his prescription morphine at work. Doc. 24-5 at PageID 146; *see also* doc. 24-1 at PageID 104. In November 2013, Sloan disclosed to a co-worker that, during work hours, he had "just cut 1 of [his] [m]orphine time release pills so [he could] get the medicine into [his] system faster." *Id*. Sloan admits that "cutting" his morphine pill was not in accordance with his doctor's prescription and that such conduct could be viewed as an abuse of the prescribed medication. Doc. 24-1 at PageID 104.

In addition to taking prescription morphine, Sloan also admitted to taking non-prescribed Vicodin, an opiate pain medication, on at least two occasions at work. *See infra*. In 2013, Sloan received a non-prescribed Vicodin pill from a co-worker and took it during work hours. Doc. 24-1 at PageID 80, 113-15. In February 2014, Sloan also disclosed in an email to a co-worker that he took one of his mother's Vicodin pills for which he had no prescription. Doc. 24-1 at PageID 80-81. On February 10, 2014, an employee allegedly told Sloan's immediate supervisor,

4

Gary Parrott,[2] that Sloan requested a Vicodin from the employee a few weeks earlier -- an accusation Sloan disputes. Doc. 25-4 at PageID 409.

Upon hearing the allegation that Sloan solicited Vicodin from a co-worker, Parrott informed Repacorp's President, Tony Heinl, about the employee's alleged statement. Heinl immediately removed Sloan from the manufacturing floor and sent him for a drug test that same day, *i.e.*, February 10, 2014. Doc. 25-2 at PageID 363. Sloan voluntarily submitted to the drug test,[3] which was positive for hydrocodone, *i.e.*, the opiate found in Vicodin. *See* doc. 25-5 at PageID 411; *see also* doc. 24-1 at PageID 80, 83. While Sloan denies having asked his co-worker for Vicodin, he admits he otherwise took non-prescribed Vicodin that led to his positive drug test, and does not challenge the positive drug test result. Doc. 24-1 at PageID 115.

Sloan was not immediately terminated for testing positive for non-prescription Vicodin[4] and, when asked why, Heinl testified:

> [B]ecause I'm too damn nice. That's the reason. I should have said no, but I was trying to keep, let him keep his job because we had invested a lot of time in [Sloan] and [Sloan] ha[d] invested a lot of time in the company, so I tried to work with him as much as I could[.]

Doc. 25-1 at PageID 293. Repacorp referred Sloan to its Employee Assistance Program ("EAP") on February 17, 2014. Doc. 24-1 at PageID 83-84, 110; doc. 25-1 at PageID 270.

---

[2] Parrott became Sloan's immediate supervisor in 2012. Doc. 24-1 at PageID 76. Sloan testified that Parrott "had a problem with [him] since the day [he] started" at Repacorp. Doc. 24-1 at PageID 76. According to Sloan, Parrott treated him "like [he] was an idiot, that [he] didn't deserve the position that [he] had." Doc. 24-1 at PageID 76.

[3] Notably, Sloan makes no allegation that Repacorp discriminated against him on the basis of his disability (or perceived disability) by requiring he take the drug test or removing him from the manufacturing floor. "[A] test to determine the illegal use of drugs shall not be considered a medical examination." 42 U.S.C. § 12114(d)(1).

[4] "The ADA does not exempt disabled individuals from reasonable rules of conduct." *Dockery v. City of Chattanooga*, 134 F.3d 370 (6th Cir. 1997). In fact, under the ADA, "a qualified individual with a disability [does] not include [an] employee . . . who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C. § 12114(a). "Illegal use of drugs refers both to the use of unlawful drugs, such as cocaine, and to the unlawful use of prescription drugs." 29 C.F.R. § Pt. 1630, App. Thus, "[e]mployers . . . may discharge or deny employment to persons who illegally use drugs, on the basis of such use, without fear of being held liable for discrimination." *Id*.

Upon referral, Sloan's EAP coordinator requested that he provide certain information from his physician, namely: whether he was permitted to work as a production manager as a result of his medical condition; whether there were any limitations on his ability to work after receiving treatment for his condition; a list of his current medications; and whether the medications prescribed impact Sloan's ability to concentrate on the job. Doc. 24-1 at PageID 110. On that same day (February 17, 2014), Repacorp placed Sloan on paid leave pending receipt of information from his physician.[5] Doc. 25-1 at PageID 282. On February 20, 2014, Sloan's pain management physician, Suresh Gupta, M.D., faxed a document to the fax number provided by Sloan's EAP coordinator stating:

> This letter is regarding Robert [Sloan] working as production manager on MS Contin, MSIR, and Relafen. He is able to work full time without any restrictions.

Doc. 28-1 at PageID 439. Repacorp contends that it did not receive this information from Dr. Gupta until March 19, 2014, *i.e.*, nearly three weeks after Sloan's employment ended. Doc. 25-8 at PageID 414.

From the beginning of his leave on February 17, 2014 until his termination less than two weeks later on February 28, 2014, Sloan remained in constant contact with Repacorp, specifically Heinl. *See id.*; *see also* doc. 23-1 at PageID 53. On February 28, 2014, Heinl called Sloan and learned for the first time that he was taking morphine. Doc. 23-1 at PageID 53; *see also* doc. 24-1 at PageID 84. Heinl -- who states that he was already concerned that Sloan had taken non-prescribed Vicodin because of the potential danger it caused to Sloan and other employees in the dangerous work environment at Repacorp -- allegedly became further concerned upon learning that Sloan was also taking morphine. Doc. 23-1 at PageID 53. According to Heinl, because Sloan was taking prescription morphine and "popping other drugs

---

[5] Notably, Sloan does not allege any discrimination claim arising from Repacorp's decision to remove him from the manufacturing floor and place him on paid leave.

that he doesn't have a prescription for[,]" he could no longer "trust [Sloan] to not do it again and . . . put the company at [risk for] a huge liability."  Doc. 25-1 at PageID 292.

Heinl asked Sloan to consult with his doctor to determine if there were any alternative medications or treatment for his pain condition that did not include opiates.  Doc. 23-1 at PageID 53, 55; *see also* doc. 25-1 at PageID 283-84, 290.  According to Heinl, "I guess what I was hoping to see is some doctor saying that they'll take full liability to put him on the floor taking Vicodin, popping Vicodin without a prescription, and taking [m]orphine."  Doc. 23-1 at PageID 55.  From Sloan's perspective, he felt that Heinl was only concerned with the fact that he was taking prescription morphine, and that Heinl had no concern with the fact that he also took non-prescribed Vicodin.  Doc. 25-1 at PageID 273, 275.

Sloan, in response to Heinl's request, attempted to contact Dr. Gupta, but he was unable to speak with him.  Doc. 24-1 at PageID 84.  Without having directly consulted with Dr. Gupta, and after considering his situation, Sloan determined that he needed "to stay on my medication" and told Heinl that he "wouldn't stop taking it."  *Id*.  Based on such fact, it appears undisputed that Sloan failed to cooperate with Heinl's reasonable request for additional information concerning Sloan's alleged disability.  *Id*.  According to Sloan, Heinl responded by saying that, "We don't have any positions here at Repacorp that you can do if you're taking [m]orphine."  Doc. 24-1 at PageID 84.  Heinl testified that he "tried to work with [Sloan] and . . . was expecting some cooperation from him, but I got zero in regards to checking with his doctor."  Doc. 23-1 at PageID 55.  Therefore, from Heinl's perspective, Sloan "chose drugs over his job[.]"  Doc. 23-1 at PageID 54.

On April 25, 2016, Sloan filed a complaint in this Court pleading a number of claims against Repacorp.  Doc. 1 at PageID 1-5.  Specifically, Sloan alleges: (1) disability discrimination in violation of Ohio Rev. Code § 4112.02(A) and the Americans with Disabilities

Act ("ADA"), as amended by the ADA Amendments Act ("ADAAA"); (2) retaliation in violation of Ohio Rev. Code § 4112.02 and the ADA; (3) intentional infliction of emotional distress ("IIED") under Ohio law; and (4) entitlement to punitive damages. *Id*. Following months of extensive discovery, which the undersigned has supervised, *see* docs. 19, 20, 33,[6] Repacorp now moves for summary judgment on all claims asserted against it. *See* doc. 25. The Court addresses Repacorp's arguments concerning each claim in turn.

**III.**

The Court first addresses Sloan's disability discrimination claims. Initially, the Court notes that Sloan makes arguments only in support of his discrimination claim under federal law, namely, the ADA, 42 U.S.C. § 12101, *et seq*. Sloan makes no developed argument concerning his corollary disability discrimination claim under Ohio Rev. Code § 4112.02 and, therefore, the undersigned finds that, insofar as his state law discrimination claim differs from his federal claim, such state law claim is abandoned. Summary judgment on his state discrimination claim, therefore, is appropriate. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

Under the ADA, employers are prohibited from discriminating against individuals on the basis of a person's "disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To prevail on a disability discrimination claim under 42 U.S.C. §12112(a), a plaintiff must prove that (1) he [or she] is disabled . . . (2) he [or she] is a 'qualified individual [,]' and (3) his [or her] employer 'discriminate[d]' against him

---

[6] The discovery deadline in this case is set for March 5, 2018. Doc. 22 at PageID 47. Although discovery has not yet expired, the Court held a discovery status conference with counsel on February 13, 2018 and, although the parties represented that discovery was ongoing, it appeared to the Court that the discovery remaining related to Plaintiff's alleged damages only. Doc. 33. Absent a Rule 56(d) motion by Plaintiff, the undersigned considers Repacorp's motion ripe for decision.

8

[or her] 'on the basis of disability.'" *Michael v. City of Troy Police Dep't*, 808 F.3d 304, 307 (6th Cir. 2015).

In this case, Sloan alleges that he is disabled as a result of "degenerative disc disease and arthritis in his neck and back," and that he was fired on the basis of such disability. Doc. 1 at PageID 2-3. Sloan alleges that his "disability requir[es] him to take prescribed medication" (*i.e.*, morphine) and that he "requested [a] reasonable accommodation before he was fired." *Id*. at PageID 1. On summary judgment, Repacorp's argument focuses on whether or not Sloan was a qualified individual -- or, more specifically, whether Sloan could be properly terminated for impeding Repacorp's efforts to determine whether or not Sloan was a qualified individual able to do his job either with or without a reasonable accommodation. *See* doc. 25 at PageID 254-57.

A qualified individual is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "A disabled person is not qualified for an employment position . . . if he or she poses a 'direct threat' to the health or safety of others which cannot be eliminated by a reasonable accommodation." *Michael*, 808 F.3d at 307 (citations and internal quotations omitted); *see also* 42 U.S.C. § 12113(b). "The term 'direct threat' means a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). In determining whether an individual poses a direct threat, an employer may rely on a medical opinion. *Michael*, 808 F.3d at 307. An employer can "require a medical examination" if "such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A).

"The employer shoulders the burden of proving the job relatedness and business necessity justifying a medical examination or disability-related inquiry." *Id*. at 581 (citing *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007)). "[A] disability-related inquiry or medical

9

examination of an employee may be job-related and consistent with business necessity when an employer has a reasonable belief, based on objective evidence, that: (1) an employee's ability to perform essential job functions will be impaired by a medical condition; or (2) an employee will pose a direct threat due to a medical condition." *Id.*; *see also Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014) (adding that an examination or inquiry is also appropriate under § 12112(d)(4)(A) where "the employee requests an accommodation"); *Denman v. Davey Tree Expert Co.*, 266 F. App'x 377, 379 (6th Cir. 2007). To be reasonable, the employer's belief must be based upon "an assessment of the employee and his/her position and cannot be based on general assumptions." *Id.*

Initially, the Court notes that Sloan offers no argument in opposition to Repacorp's contention that it made proper medical inquiries of him under § 12112(d)(4)(A) when Repacorp (1) requested information from his treating physician on February 17, 2014 and (2) when Heinl sought information as to whether Sloan's pain could be managed by medication other than opiates. Accordingly, in the absence of any specific opposition by Sloan, the undersigned finds that Repacorp's medical inquiries were appropriate under § 12112(d)(4)(A).

Even absent Sloan's concession in this regard, the undersigned would nevertheless find Repacorp had reason to believe that Sloan could not perform the essential functions of his job and/or posed a danger to himself or others in light of the undisputed fact that, *inter alia*, Sloan's job required use of dangerous equipment and the supervision of others using such equipment; he failed a drug test after admittedly taking non-prescribed Vicodin; he admittedly took non-prescribed Vicodin while also taking prescription morphine; and he, in the past, had abused his prescribed slow release morphine at work by "cutting" it for immediate relief. In addition, Repacorp's inquiry, as to whether non-opiate drugs could reasonably accommodate Sloan's disability, was proper under § 12112(d)(4)(A) because, from the Court's perspective, it was

10

made in response to Sloan's request for an accommodation -- *i.e.*, to be permitted to use prescription morphine in the workplace. *Kroll*, 763 F.3d at 623; *cf. Kollmer v. Jackson Tenn. Hosp. Co., LLC*, 219 F. Supp. 3d 738, 746 (W.D. Tenn. 2016) (considering plaintiff's claim that her employer "failed to accommodate her by allowing her to take [prescription] medication" while on the job).

While Sloan argues that Repacorp discriminated against him for terminating his employment without properly determining that he posed a "direct threat" while under the influence of morphine, *see* doc. 28 at PageID 432-34, Sloan overlooks Repacorp's main point, *i.e.*, that Sloan's employment ended not because Repacorp concluded he was a direct threat to himself or others, but because Sloan impeded its ability to investigate the extent of his disability and determine whether his disabling pain required use of prescription morphine, or whether a non-opiate medication could reasonably accommodate his disability. *See* doc. 25 at PageID 254; doc. 31 at PageID 443. In other words, Sloan failed to cooperate and/or participate in the interactive process required of all employees requesting accommodations under the ADA. *See infra*. The Court agrees with Repacorp, and concludes that summary judgment is proper on that basis.

As noted by the Sixth Circuit, an "employer need not take the employee's word for it that the employee has an illness that may require special accommodation" and, "[i]nstead, the employer has the ability to confirm or disprove the employee's statement" under 42 U.S.C. 12112(d)(4)(A). *E.E.O.C. v. Prevo's Family Mkt., Inc.*, 135 F.3d 1089, 1094 (6th Cir. 1998). As stated by the Sixth Circuit, "the purpose of the ADA was not to create impediments for such employer-employee co-operation, but to promote an interactive dialogue between an employer and employee to discover to what extent the employee is disabled and how the employee may be accommodated, if at all, in the workplace." *Id*. at 1095. Such interactive process is necessary

because "the law in this circuit does not entitle [an employee] to the accommodation of [his or] her choice, but only a reasonable accommodation." *Black v. Wayne Ctr.*, Nos. 99-1225, 99-1249, 2000 WL 1033026, at *4 (6th Cir. Jul. 17, 2000); *see also Hankins v. The Gap, Inc.*, 84 F.3d 797, 801 (6th Cir. 1996). No discrimination occurs where employment is terminated as a result of an employee's refusal to engage in the interactive process. *Prevo's Family Mkt.*, 135 F.3d at 1096.

Here, there is no dispute that Heinl requested Sloan consult with his physician to determine whether opiate medication was required to control the pain arising from his neck and back disability -- a proper inquiry under *Prevo's Family Mkt.*, 135 F.3d at 1095. *See* doc. 24-1 at PageID 84. Sloan, without dispute, did not consult with his physician or other treater and, instead, informed Heinl that he "wouldn't stop taking [morphine]." *Id*. Sloan's refusal to engage in the interactive process described in *Prevo's Family Mkt.* deprived Repacorp from confirming the extent of his disability and the breadth of potential accommodations that might have reasonably been afforded to him. *Cf. id*.

From Sloan's perspective, Heinl's statement -- that he could not remain employed if taking morphine -- evidences that he was fired for his morphine use. *See* doc. 28 at PageID 430 (arguing that "the fact Sloan was taking morphine medication was the crux of why he was fired"). However, Sloan's alleges disability as a result of his degenerative disc disease in his neck and back, not his use of drugs. *See* doc. 1 at PageID 2; *see also* doc. 28 at PageID 424. He does not contend that his drug use "substantially limits one or more major life activities[.]" *See* 42 U.S.C. § 12102(1). Even assuming, *arguendo*, that Sloan's alleges disability as a result of his drug use, as noted *supra*, an "employer need not take the employee's word for it that the employee has an illness that may require special accommodation" and, "[i]nstead, the employer has the ability to confirm or disprove the employee's statement" under 42 U.S.C.

12112(d)(4)(A). *Prevo's Family Mkt.*, 135 F.3d at 1094. There is no dispute that Heinl reasonably asked Sloan to confer with his physician as to whether he could take non-opiate medication and Sloan did not do so.

Accordingly, based on the foregoing, the Court **GRANTS** Repacorp's motion for summary judgment on Sloan's disability discrimination claim. *Accord Prevo's Family Mkt.*, 135 F.3d at 1096.

## IV.

The Court next addresses Sloan's claim of retaliation. Retaliation against an individual who exercises his or her rights under the ADA is prohibited by 42 U.S.C. § 12203(a). Ohio law similarly prohibits such retaliation under Ohio Rev. Code § 4112.02. "To prove a claim for retaliation, a plaintiff must demonstrate: that [he or] she engaged in protected activity; that the exercise of [his or] her civil rights was known by the defendant; that defendant thereafter took adverse employment action; and that a causal connection exists between the protected activity and the adverse employment action." *Walborn v. Erie Cty. Care Facility*, 150 F.3d 584, 588–89 (6th Cir. 1998).

Here, Sloan argues that he engaged in protected conduct when he "tried to convince Heinl he could do his job on the medications." Doc. 28 at PageID 435. However, as set forth above, "the purpose of the ADA was not to create impediments for such employer-employee co-operation, but to promote an interactive dialogue between an employer and employee to discover to what extent the employee is disabled and how the employee may be accommodated, if at all, in the workplace." *Prevo's Family Mkt.*, 135 F.3d at 1095. In other words, an employer is entitled to seek an examination or make a medical inquiry under § 12112(d)(4)(A) where "the employee requests an accommodation." *Kroll*, 763 F.3d at 623.

A retaliation claim cannot stand where an employee refuses a proper request for a medical exam or medical inquiry under 42 U.S.C. § 12112(d)(4)(A). *See Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 814 (6th Cir. 1999) (finding plaintiff's ADA retaliation claim "logically incoherent" where plaintiff "refus[ed] to submit to the mental and physical exams" under § 12112(d)(A)(4)); *Brownfield v. City of Yakima*, 612 F.3d 1140, 1147 (9th Cir. 2010) (finding that plaintiff's ADA retaliation claim must fail where plaintiff refused a lawful medical request under §12112(d)(4)(A)); *Ward v. Merck & Co.*, No. CIV.A. 04-CV-5996, 2006 WL 83114, at *9 (E.D. Pa. Jan. 9, 2006) (finding an employer's "decision to terminate [p]laintiff's employment, after he refused or failed to submit to the examination, is not retaliation under the ADA"), *aff'd*, 226 F. App'x 131, 141 (3d Cir. 2007) (holding that plaintiff's retaliation was "totally devoid of merit" where he had refused a proper medical inquiry under § 12112(d)(4)); *Coleman v. Caterpillar, Inc.*, No. 115CV01001SLDJEH, 2017 WL 3840423, at *9 (C.D. Ill. Sept. 1, 2017) (granting summary judgment on plaintiff's ADA retaliation claim where plaintiff refused a proper medical exam under § 12112(d)(4)(A)).

Based on the foregoing, the undersigned finds summary judgment appropriate on Sloan's retaliation claim. Accordingly, Repacorp's motion for summary judgment in this regard is **GRANTED.**

## V.

Repacorp moves for summary judgment on Sloan's IIED claim arguing that its alleged conduct -- *i.e.*, terminating Sloan for supposedly discriminatory reasons -- is insufficient to support such a claim as a matter of law. Doc. 25 at PageID 261-62. Repacorp also argues that summary judgment is proper on Sloan's IIED claim because his allegations of severe emotional distress are supported by nothing other than his own testimony. *Id.* Sloan sets forth no developed argument in support of his IIED claim and, therefore, the Court finds summary

judgment is proper based on Sloan's forfeiture of such claim. *James v. Goodyear Tire & Rubber Co.*, 354 F. App'x 246, 250 (6th Cir. 2009) (stating that a party "forfeits" claims on summary judgment where the argument in support of such claims are set forth only "in a 'perfunctory manner,' without 'some effort at developed argumentation'") (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)).

Even absent forfeiture of the IIED claim, summary judgment would be appropriate on the merits for the reasons advanced by Repacorp. An intentional infliction of emotional distress claim under Ohio law requires proof that:

> (1) the defendant intended to cause, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure.

*Shugart v. Ocwen Loan Servicing, LLC*, 747 F.Supp.2d 938, 944-45 (S.D. Ohio 2010) (citations omitted); *Southward v. FedEx Freight, Inc.*, 98 F. Supp. 3d 926, 932-33 (S.D. Ohio 2014).

As noted by Repacorp, "simply terminating an employee, in and of itself . . . is insufficient conduct upon which one can base" an IIED claim. *Id*. at 933 (citing *Kendrick v. Walgreen Co.*, No. 3:11-cv-404, 2012 WL 5845016, at *12 (S.D. Ohio Nov. 19, 2012); *Blackshear v. Interstate Brands Corp.*, No. 10–3696, 2012 WL 3553499, at *6 (6th Cir. Aug. 20, 2012); *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999)). Sloan points to no conduct -- beyond Repacorp terminating his employment -- to support his allegation of extreme and outrageous conduct.

Further, as also argued by Repacorp, "a plaintiff must at least provide some evidence beyond his or her own testimony" to support the assertion that he or she suffered severe emotional distress. *Id*. (citing *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1111

(6th Cir. 2008); *Buckman–Peirson v. Brannon*, 822 N.E.2d 830, 841 (Ohio Ct. App. 2004)). No such evidence has been produced by Sloan in response to Repacorp's properly supported summary judgment motion. Moreover, even if Sloan's testimony by itself were sufficient to support an IIED claim, his testimony demonstrates the opposite: that he has not suffered severe emotional distress as a result of Repacorp's conduct. *See* doc. 24-1 at PageID 86. At deposition, Sloan testified, *inter alia*, that he has no recollection of ever being diagnosed with depression; that he was prescribed medication for anxiety because of the death of his mother (not because his job was terminated); and that he has never been diagnosed with any sleep disorder.

Accordingly, Repacorp's motion for summary judgment is **GRANTED** with regard to Sloan's IIED claim.

## VI.

Finally, Repacorp moves for summary judgment on Sloan's request for punitive damages. Finding summary judgment proper on all of Sloan's substantive claims, he is therefore not entitled to recover any damages, including punitive damages. Accordingly, Repacorp's motion is well-taken and summary judgment is **GRANTED** on Sloan's request for punitive damages.

## VII.

Based on all of the foregoing, Repacorp' motion for summary judgment (doc. 25) is **GRANTED** in its entirety. Judgment shall issue forthwith in favor of Repacorp and this case shall be **TERMINATED** on the Court's docket.

**IT IS SO ORDERED.**

Date:  February 27, 2018              *s/ Michael J. Newman*
                                      Michael J. Newman
                                      United States Magistrate Judge